IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO. 5:22-cv-00076-MR

| | | |
|---|---|---|
| OSCAR PEREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OF** |
| vs. | ) | **DECISION AND ORDER** |
| | ) | |
| RONNIE LANE HUNEYCUTT, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Defendants Darren Daves, Jeffrey Duncan, Eric Dye, and Ronnie Lane Huneycutt's Motion for Summary Judgment [Doc. 43] and Motion to Seal [Doc. 45].

**I.   BACKGROUND**

The incarcerated Plaintiff Oscar Perez, proceeding pro se, is incarcerated in the North Carolina Department of Adult Corrections ("NCDAC"). The Plaintiff filed this action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred at the Alexander Correctional Institution.[1] [See Doc. 1: Complaint]. The Plaintiff's unverified Amended Complaint passed initial review against Defendants Huneycutt, Dye, Duncan

---

[1] The Plaintiff is presently incarcerated at the Tabor Correctional Institution.

and Daves on Eighth Amendment claims regarding the conditions of his confinement.[2] [Docs. 12, 19: Orders on Initial Review]. The Plaintiff seeks a declaratory judgment; compensatory, nominal and punitive damages; injunctive relief; and a jury trial.[3] [Doc. 17: Am. Compl. at 10].

The Defendants filed the instant Motion for Summary Judgment and a supporting Memorandum and attachments which they have moved to seal. [Doc. 43: MSJ; Doc. 44: MSJ Memo.; Doc. 45: Motion to Seal]. Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 46: Roseboro Order]. The Plaintiff filed a Response, a verified supporting Memorandum, and exhibits. [Doc. 50: MSJ Response; Doc. 50-1: Response Memo.; Doc. 50-2:

---

[2] The Complaint and the Amended Complaint are signed under Plaintiff's "affirmation" that the Plaintiff "read all of the statements contained [in them]" and that Plaintiff "believe[s] them to be true and correct to the best of [his] … knowledge and belief." [Doc. 1 at 10; Doc. 17 at 11]. However, they are not signed under penalty of perjury. See 28 U.S.C. § 1746 (addressing verification).

[3] The Court will consider only the claims in the Amended Complaint that passed initial review; any evidence and arguments pertaining to allegations that are not properly before the Court will be disregarded. [See Doc. 51: MSJ Reply (arguing that Plaintiff should not be allowed to add allegations in his MSJ Response)]; see generally Fed. R. Civ. P. 15.

2

Response Exhibits]. The Defendants filed a Reply.[4]  [Doc. 51: Reply]. This matter is ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

---

[4] The Plaintiff filed a "Proposed Surreply" to the Defendants' Reply. [Doc. 52]. Surreplies "are neither anticipated nor allowed" by the Court's Local Civil Rules, "but leave of Court may be sought to file a surreply when warranted."  LCvR 7.1(e).  Here, the Plaintiff did not seek leave to file a surreply.  Moreover, the Court finds that fairness does not dictate that the surreply be permitted.  Accordingly, the Plaintiff's Surreply will be stricken.  Even if the "Proposed Surreply" were considered, however, it would not change the Court's analysis.

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380.

## III. FACTUAL BACKGROUND

The forecast of evidence, viewed in the light most favorable to the Plaintiff, shows the following.

In 2006, the Plaintiff was sentenced to 85 years' imprisonment in Indiana. [Doc. 50-1: Response Memo. at 3]. He was transferred to the North Carolina Department of Public Safety[5] pursuant to the Interstate Corrections

---

[5] NCDPS is now called the North Carolina Department of Adult Corrections.

Compact in February 2020. [Doc. 50-1: Response Memo. at 3]. The Plaintiff arrived at Alexander CI in April 2020. [Doc. 50-2: Plaintiff's Decl. at ¶ 5].

Inmates were supposed to receive yard/gym three times per week at Alexander CI. [Doc. 44-2: Dye Decl. at ¶ 3]. The Plaintiff received between 10 and 15 hours of exercise out of his cell during 2021, and he received no outdoor activity between January and July 2022. [See Doc. 50-2: Plaintiff's Decl. at ¶ 24]. The Plaintiff was unable to exercise inside his cell due to its size and hygiene concerns,[6] and inmates were not allowed to exercise in the dayroom during 2021. [Doc. 50-2: Plaintiff's Decl. at ¶ 10].

At least once during 2021, the facility was locked down during "Red" COVID levels, which precluded dayroom exercise and yard/gym recreation. [Doc. 44-2: Dye Decl. at ¶ 6; Doc. 50-2: Plaintiff's Decl. at ¶ 9]. Alexander CI started to experience staffing shortages during the latter part of 2021. [Doc. 44-2: Dye Decl. at ¶ 4]. When Huneycutt became warden in late November 2021, the facility was approximately 50% understaffed. [Doc. 44-5: Huneycutt Decl. at ¶¶ 2-3]. Recreation was not provided on days when there was inadequate staff to supervise the yard/gym, or due to conditions such as weather or COVID. [Doc. 44-2: Dye Decl. at ¶ 4].

---

[6] This appears to refer to the inability to shower.

6

In January 2022, Huneycutt received approval from NCDPS to implement temporary modified lockdown until the facility's staffing issues could be resolved. [Doc. 44-5: Huneycutt Decl. at ¶ 4]. At the same time, Huneycutt received approval to allow inmates to exercise in the dayrooms, so that the inmates had an opportunity to exercise four or five times per week. [Doc. 50-2: Plaintiff's Decl. at ¶ 11; see Doc. 44-2: Dye Decl. at ¶ 5; Doc. 44-5: Huneycutt Decl. at ¶ 6]. In July 2022, NCDPS approved use of the outside egress yard for recreation, which gave inmates an additional 45 minutes of outside recreation per week. [Doc. 44-2: Dye Decl. at ¶ 5]. In August 2022, NCDPS allowed Huneycutt to increase the number of inmates allowed in the dayroom, which gave inmates an additional 30 minutes of indoor exercise per day. [Doc. 44-2: Dye Decl. at ¶ 5].

The Plaintiff worked in the facility's kitchen shortly after arriving at Alexander CI. [Doc. 50-2: Plaintiff's Decl. at ¶ 6]. The Plaintiff worked the first shift between 4:00 a.m. and 11:30 a.m., meaning that he was out of his cell for 7 ½ hours every day. [Id.]. He would miss recreation that was offered during his work hours. [Id. at ¶¶ 8, 11; Doc. 50-1: Response Memo. at 7].

Before the Plaintiff was transferred to North Carolina, he was diagnosed with mental health conditions; he did not have any health issues; and his weight fluctuated between 190 and 205 pounds. [Doc. 50-2:

Plaintiff's Decl. at ¶ 4; Doc. 50-2: Response Ex at 26; Doc. 50-1: Response Memo. at 3]. Upon his intake in North Carolina, the Plaintiff's weight was 196 pounds, his cholesterol was slightly elevated, and he was prescribed cholesterol medication. [Doc. 50-1: Response Memo. at 3]. During 2021, the Plaintiff felt more depressed and anxious; his weight increased from 206 to 217 pounds; his cholesterol and blood pressure increased; he always felt tired; and his head and back constantly hurt. [Doc. 50-2: Plaintiff's Decl. at ¶¶ 3, 12, 14, 16, 18]. In January 2021, a physician ordered the Plaintiff to increase his exercise, but he was unable to comply because of the facility's exercise restrictions. [Id. at ¶ 14]. In February 2022, Plaintiff's cholesterol medication was increased. [Id. at ¶ 15].

In mid-2021, the Plaintiff informed Defendant Daves that he was "not getting yard and that it was affecting [his] health." [Id. at ¶ 20]. Daves did not believe him and stated that inmates were "getting yard (3) times a week." [Id.]. Daves lacked authority to create or change facility policies; he would follow policies that the warden set. [Doc. 44-4: Daves Decl. at ¶¶ 2-3].

The Plaintiff filed grievances in October and November 2021 complaining that a lack of exercise was negatively affecting his mental and physical health. [Id. at ¶ 21; Doc. 50-2: Response Ex at 27 (Oct. 26, 2021 grievance)]. Daves rejected the October grievance because the Plaintiff

8

already had a grievance pending. [Id.]. Defendants Daves and Duncan responded to the November grievance, stating that recreation was being provided in accordance with facility safety and security, and that the facility was working to increase the yard/recreation time. [Doc. 50-2: Plaintiff's Decl. at ¶¶ 17, 20-21; Doc. 50-2: Response Ex at 28-30 (Nov. 6, 2021 grievance and responses)].

The Defendants were never informed by medical staff that the lack of exercise was contributing to any particular inmate's medical conditions, or that the exercise opportunities afforded to Plaintiff were negatively affecting his blood pressure, cholesterol, weight, mental health, or life expectancy. [Doc. 44-2: Dye Decl. at ¶ 7; Doc. 44-3: Duncan Decl. at ¶ 7; Doc. 44-4: Daves Decl. at ¶ 7; Doc. 44-5: Huneycutt Decl. at ¶ 8]. The Defendants did not have any feelings of ill-will towards the Plaintiff, nor did they want to harm him. [Id. at ¶ 8; id. at ¶ 8; id. at ¶ 8; id. at ¶ 9].

## IV. DISCUSSION

### A. Conditions of Confinement

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "The Eighth Amendment 'does not prohibit cruel and unusual prison conditions.'" Thorpe v. Clarke, 37 F.4th

9

926, 940 (4th Cir. 2022) (quoting Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993)). "It asks instead whether the conditions of confinement inflict harm that is, objectively, sufficiently serious to deprive of minimal civilized necessities." Id. (citation omitted). "Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment prohibition against cruel and unusual punishment." Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir. 1997). Extreme deprivations are required. Hudson v. McMillian, 503 U.S. 1, 9 (1992).

To establish an Eighth Amendment claim, an inmate must satisfy both an objective component—that the harm inflicted was sufficiently serious— and subjective component—that the prison official acted with a sufficiently culpable state of mind. Williams, 77 F.3d at 761. In the case of a claim of inhumane conditions of confinement, "the requisite state of mind is deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 834 (1994); Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016). As the Supreme Court has explained, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists, and he must also draw the inference." Id.  A plaintiff must also allege "a serious or significant physical or emotional injury resulting from the challenged conditions."  Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993).

Assuming *arguendo* that the limited exercise opportunities were objectively sufficiently serious and significantly affected the Plaintiff's physical and mental health, the Plaintiff has failed to present a forecast of evidence of any Defendant's subjective deliberate indifference.

The forecast of evidence before the Court demonstrates that Defendant Daves was aware of the Plaintiff's complaints regarding inadequate exercise by mid-2021, and that Defendant Duncan was aware of his complaints by November or December 2021.  However, the forecast of evidence also demonstrates that these Defendants, as well as Defendant Dye, lacked the authority to set policies or alter the policies that governed these restrictions.  [See Doc. 44-4: Daves Decl. at ¶ 3 (the warden set policies)]; see also Hoehn, 2024 WL 1021069, at *9-10 (finding that a unit manager did not act with deliberate indifference because he did not have the authority and the ability to correct the plaintiff's complaints about denial of outdoor recreation and exercise out of his cell) (citations omitted).

11

As to Defendant Huneycutt, who did have the authority to set policies, the forecast of evidence demonstrates that the lack of exercise opportunities was due to severe understaffing, state COVID restrictions, and the Plaintiff's work schedule, rather than deliberate indifference. [Doc. 44-5: Huneycutt Decl. at ¶¶ 2-3; Doc. 44-2: Dye Decl. at ¶ 4]. The forecast of evidence demonstrates that Defendant Huneycutt took steps to improve exercise opportunities shortly after he became warden in late November 2021, and that the Plaintiff admits that he had the opportunity to exercise indoors two or three times per week by mid-January 2022.

As to the lack of outdoor activity for seven months during 2022, the undisputed forecast of evidence shows that this was due to an extreme staffing shortage; the Plaintiff has not forecast any evidence that this restriction was due to deliberate indifference. Moreover, the forecast of evidence shows that Defendant Huneycutt provided regular indoor exercise opportunities during the lockdown period in order to increase inmates' ability to exercise.

In short, the Plaintiff has not presented a forecast of evidence from which a reasonable jury could conclude that any Defendant intended to harm the Plaintiff or deliberately ignored an excessive risk to his physical or emotional health that was within the Defendants' control. The Plaintiff has

12

failed to demonstrate the existence of a genuine dispute of material fact as to the Defendants' deliberate indifference and, accordingly, the Defendants' Motion for Summary Judgment will be granted.

## B. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because the Plaintiff has not presented a forecast of evidence that any Defendant violated a constitutional right, the Defendants are entitled

to qualified immunity. As such, summary judgment for the Defendants would also be proper on this ground.

### C. Motion to Seal

Finally, the Defendants move to seal their Memorandum in support of summary judgment and the attached exhibits. [Doc. 45; see Doc. 44]. For grounds, they argue that they were provided with confidential documents, including medical and mental health records, from NCDPS during discovery; that the Defendants produced many of these confidential documents pursuant to a Protective Order[7]; that the documents attached to the Memorandum are all confidential; and that the Memorandum discusses and quotes the Plaintiff's medical and mental health records. The Plaintiff has not responded to the Motion, and the time to do so has expired.

In evaluating a motion to seal, the Court must "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." Ashcraft v. Conoco, Inc., 218 F. 3d 288, 302 (4th Cir. 2000); see also LCvR 6.1.

---

[7] [See Doc. 34].

Having considered these factors, the Court concludes that the unredacted Memorandum and the Exhibits attached to the Declaration of Counsel filed as Docket Entry 44-1 should be sealed as the only means of avoiding the disclosure of confidential information. However, the Defendants will be directed to file a redacted version of their Memorandum [Doc. 44] on the docket.

As for the Defendants' request to seal their Declarations, it does not appear that the Defendants' Declarations contain such confidential information. [See Docs. 44-2, 44-3, 44-4, 44-5]. Accordingly, the Motion to Seal is denied as to the Defendants' Declarations.

## IV. CONCLUSION

For the reasons stated herein, the Court grants Defendants' Motion for Summary Judgment, and this action is dismissed with prejudice. The Defendants' Motion to Seal is granted in part and denied in part as stated in this Order.

### ORDER

**IT IS, THEREFORE, ORDERED** that:

1. The Defendants' Motion for Summary Judgment [Doc. 43] is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Defendants' Motion to Seal [Doc. 45] is **GRANTED IN PART AND DENIED IN PART.** The Motion is **GRANTED** as to Documents 44 and 44-1, and such documents shall remain under seal until further Order of the Court. The Motion is **DENIED** with respect to the Defendants' Declarations [Docs. 44-2, 44-3, 44-4, 44-5], and the Clerk is respectfully instructed to unseal those documents.

3. The Defendants shall file a redacted Memorandum [Doc. 44] within seven (7) days of the entry of this Order.

4. The Plaintiff's "Proposed Surreply" is hereby **STRICKEN**.

**IT IS SO ORDERED.**

Signed: June 19, 2024

Martin Reidinger
Chief United States District Judge